UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                )
DONNA MARIE COBURN,            )
on behalf of herself and                )
all others similarly situated,           )
                                                )
                Plaintiff,             )
                                                )
      v.                                    )    Civil Action No. 15–49 (RBW)
                                                )
EVERCORE TRUST COMPANY, N.A.,  )
                                                )
                Defendant.          )
_____)

## MEMORANDUM OPINION

The complaint in this putative class action alleges that the defendant, Evercore Trust Company, N.A., in its capacity as the plan fiduciary of an employee stock ownership plan governed by the Employment Retirement Income Security Act ("ERISA"), breached its duty of prudence by failing to prevent plan participants, such as the plaintiff, from purchasing or holding J.C. Penney Corporation, Inc. ("J.C. Penney" or "Company") stock in their retirement plans once it allegedly became clear that J.C. Penney's transformation strategy was doomed to fail. Complaint ("Compl.") ¶¶ 1–9. Currently pending before the Court is Defendant Evercore Trust Company, N.A.'s Motion To Dismiss ("Def.'s Mot."), ECF No. 14, which seeks dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. See Def.'s Mot. Upon consideration of the parties' submissions, the Court concludes that it must grant the defendant's motion to dismiss the complaint.[1]

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum in Support of Defendant Evercore Trust Company N.A.'s Motion To Dismiss ("Def.'s Mem."); (2) the Plaintiff's Memorandum of Law in Opposition to Defendant's Motion To Dismiss

(continued . . . )

## I.     BACKGROUND

The plaintiff, Donna Marie Coburn, is a former employee of J.C. Penney, a retail department store, who purchased and held J.C. Penney common stock in her retirement account through the J.C. Penney Savings Profit-Sharing and Stock Ownership Plan (the "Plan") during the class period.[2]  Compl. ¶¶ 13, 15, 17, 24.  The defendant is the Plan's designated fiduciary and investment manager under a 2009 trust agreement between J.C. Penney and the defendant. Compl. ¶¶ 6, 21; Def.'s Mem., Exhibit ("Ex.") 3 ¶ 1 ("[J.C. Penney] hereby appoints [the defendant] as the named fiduciary and investment manager for the assets of the Plan . . . .").  The plaintiff contends, and the defendant does not dispute, that the Plan is an "employee pension benefit plan" and an individual account plan governed by the ERISA.  See Compl. ¶ 15; Def.'s Mem. at 2; see also 29 U.S.C. §§ 1002(2)(A), 1107(d)(3) (2012).  The Plan is intended to qualify as an employee stock ownership plan, or "ESOP," under Section 401(k) of the Internal Revenue Code, and to hold J.C. Penney common stock as a "permanent feature" of the Plan.  Def. Mem., Ex. 3 ¶¶ 1, 2.  As of January 2012, the Plan held approximately $515 million in J.C. Penney stock, which represented more than 14% of the Plan's assets.  Compl. ¶ 19.

Following the installation of its new chief executive, Ron Johnson ("Johnson"), J.C. Penney, in January 2012, initiated a transformation plan spearheaded by Johnson and intended to improve the Company's performance following the 2008 financial downturn.  Id. ¶¶ 4, 25–29,

---

( . . . continued)
("Opp'n"); (3) the Reply Memorandum in Support of Defendant Evercore Trust Company N.A.'s Motion To Dismiss ("Reply"); (4) the defendant's August 5, 2015 letter notifying the Court of new case authority bearing on the issues presented in its motion to dismiss, ECF No. 19 ("Def.'s First Notice"); (5) the plaintiff's August 6, 2015 letter responding to the defendant's notice of new case authority, ECF No. 20 ("Pl.'s Response to Def.'s First Notice"); (6) the defendant's February 9, 2016 letter notifying the Court of new case authority bearing on the issues presented in its motion to dismiss, ECF No. 21 ("Def.'s Second Notice"); and (7) the plaintiff's February 9, 2016 response to the defendant's notice of new case authority, ECF No. 22 ("Pl.'s Response to Def.'s Second Notice").

[2] The class period alleged in the complaint is May 15, 2012, to January 13, 2015 (the date the complaint was filed).  Compl. ¶ 1.

34–37. Johnson's transformation plan included eliminating J.C. Penney's use of "sales, coupons, and rebates" in favor of "a new 'Fair and Square Pricing' policy where three and only three prices would be offered: (1) the 'everyday' price; (2) a month-long 'value' price; and (3) a 'best' price offered on the first and third Fridays of every month." Id. ¶ 36. In addition, the transformation plan would change the physical appearance of J.C. Penney stores by implementing a "store within a store" layout to replace the "traditional organization of confusing and seemingly endless racks found in [J.C. Penney] department stores," changing the selection of brands offered in the stores, and updating the Company's logo. Id. ¶ 37.

On May 15, 2012, J.C. Penney released its first quarter 2012 financial results, reporting a loss of $163 million, id. ¶ 39, which resulted in the Company's chief operating officer admitting: "We did not realize how deep some of the customers were into [coupons]," id. ¶ 40. Johnson also stated that the discontinued coupons "were a drug" that "really drove traffic." Id. J.C. Penney also "cancel[ed] its dividend" for only the second time since 2006. Id. ¶ 41. Following this announcement, the Company's performance continued to decline, with double-digit percentage reductions in revenue every quarter from the beginning of 2012 to the middle of 2013. Id. ¶¶ 44–45. In January 2013, Johnson stated in a Businessweek magazine article that the "core [J.C. Penney] customer . . . was much more dependent and enjoyed coupons more than [he] understood." Id. ¶ 50. The Company's negative performance was chronicled in public regulatory filings and news articles, and was discussed by market analysts. See id. ¶¶ 45–49 (detailing revenue results reported in the Company's quarterly and annual reports, and providing examples of analyst downgrades of J.C. Penney stock). Johnson was terminated in April 2013. See id. ¶ 49. J.C. Penney's stock price dropped from $36.72 at the end of the first quarter of 2012 to $17.26 a year later, and its stock closed 2013 at $5.92. Id. ¶¶ 45, 47.

The plaintiff contends that because the failure of J.C. Penney's transformation strategy was evident from publicly available information, "Evercore knew that continued investment in [the Company's] stock was imprudent under its fiduciary obligations imposed by ERISA." Id. ¶ 42; see also id. ¶ 46 ("Even looking to the Company's stock price . . . , the grim truth was crystal clear no later than the beginning of the Class Period and became more disturbing with every quarter."); id. ¶ 51 ("Despite the red flags . . . , Evercore Trust did nothing to protect the assets of the Plan and the interest of its participants and beneficiaries . . . ."). Based on these allegations, the plaintiff claims that the defendant is liable for losses to the Plan under Sections 409 and 502 of the ERISA, 29 U.S.C. §§ 1109(a), 1132(a)(3). Id. ¶ 10.

## II.   STANDARD OF REVIEW

For a complaint to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint must state a facially plausible claim for recovery. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court, which is required to assume that all well-pleaded allegations in the complaint are true, must find that the complaint is sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555; see Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting Twombly, 550 U.S. at 570)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quotation marks omitted). Legal conclusions masquerading as factual allegations are not enough to survive a motion to dismiss. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). Although the court must, in general, limit its review to the allegations in the complaint, it may consider "documents upon which the complaint

necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." Ward v. D.C. Dep't of Youth Rehabilitation Servs., 788 F. Supp. 2d 117, 119 (D.D.C. 2011) (quoting Hinton v. Corr. Corp. of Am., 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (internal quotation marks omitted)).

### III. ANALYSIS

The plaintiff asserts that the defendant, despite publicly available information demonstrating the "shockingly bad" state of J.C. Penney's revenues and floundering revitalization plans, breached its fiduciary duty by (1) failing to monitor the propriety of continuing to offer J.C. Penney stock as an investment option for the Plan and (2) failing take any action to "[s]top[] Plan participants from continued investment in Company stock" or liquidate the Plan's holdings of the Company's stock.  Compl. ¶¶ 39, 52–54.  The defendant responds that the allegations in the complaint, based entirely on the defendant's knowledge of and alleged failure to act upon publicly available information, are insufficient to state a claim for breach of the duty of prudence under the Supreme Court's decision in Fifth Third Bancorp v. Dudenhoeffer, __ U.S. __, 134 S. Ct. 2459 (2014).  Upon consideration of Dudenhoeffer and its application to the plaintiff's allegations, the Court concludes that the complaint fails to state a plausible claim for relief.

#### A. The Application of the Dudenhoeffer Pleading Standard

Dudenhoeffer, like this case, involved an ESOP that held stock of Fifth Third Bancorp ("Fifth Third"). __ U.S. at __, 134 S. Ct. at 2464.  The plaintiffs there, former employees of Fifth Third and participants in the ESOP, claimed that the defendants violated their duty of prudence by failing to shield plan participants from Fifth Third stock despite publicly available information indicating that the subprime mortgage market, in which Fifth Third had a significant

financial stake, was on the brink of collapse. Id. Dudenhoeffer announced two seminal holdings applicable to ESOPs such as the Fifth Third retirement plan at issue in that case.[3] Critical to the resolution of the issue before the Court in this case was the Supreme Court's holding that "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances." Id., __ U.S. at __, 134 S. Ct. at 2471 (emphasis added). In reaching this conclusion, the Court explained that "[m]any investors take the view that 'they have little hope of outperforming the market in the long run based solely on their analysis of publicly available information,' and accordingly they 'rely on the security's market price as an unbiased assessment of the security's value in light of all public information.'" Id. (quoting Halliburton Co. v. Erica P. John Fund, __ U.S. __, __, 134 S. Ct. 2398, 2411 (2014), and Amgen Inc. v. Conn. Retirement Plans & Trust Funds, __ U.S. __, __, 133 S. Ct. 1184, 1192 (2013)). Because "a fiduciary usually 'is not imprudent to assume that a major stock market provides the best estimate of the value of the stocks traded on it that is available to him,'" id. (quoting Summers v. State Street Bank & Trust Co., 453 F.3d 404, 408 (7th Cir. 2006) (ellipsis omitted)), a plaintiff must "point[] to a special circumstance affecting the reliability of the market price as 'an unbiased assessment of the security's value in light of all public information' that would make reliance on the market's valuation imprudent," id., __ U.S. at __, 134 S. Ct. at 2472 (quoting Halliburton, __ U.S. at __, 134 S. Ct. at 2411, and Amgen, __ U.S. at __, 133 S. Ct. at 1192).

---

[3] The Supreme Court also rejected the "presumption of prudence" applied in some circuits when reviewing claims for breach of the duty of prudence against ESOP fiduciaries, concluding that this presumption is inconsistent with the ERISA's intended protections of ESOP participants and beneficiaries. Dudenhoeffer, __ U.S. at __, 134 S. Ct. at 2467–71.

The defendant argues that Dudenhoeffer is indistinguishable from this case and that the Supreme Court's holding therefore requires dismissal of the complaint. Def.'s Mem. at 6. The plaintiff, in opposition, asserts that because her complaint is devoid of any allegation that J.C. Penney stock was "artificially inflated," Dudenhoeffer's holding is inapplicable to this case. Opp'n at 10–11. The Court does not share the plaintiff's reading of Dudenhoeffer.

As noted earlier, the Supreme Court held:

> In our view, where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances.

Dudenhoeffer, __ U.S. at __, 134 S. Ct. at 2471 (emphasis added). The plaintiff's position that Dudenhoeffer is limited to cases in which an "artificially inflated" stock price is alleged, see Opp'n at 10, ignores the Supreme Court's specific rejection of the argument that a fiduciary should have known from publicly available information alone that a stock's price was "over- or under[]"-valued, i.e., that the stock was valued either too high or too low. [4] Dudenhoeffer, __ U.S. at __, 134 S. Ct. at 2471. The Supreme Court's inclusion of both scenarios in its ultimate holding is consistent with its observation that ESOP fiduciaries often find themselves caught between the proverbial rock and hard place, being exposed to litigation both when, on the one hand, they fail to take advantage of an allegedly undervalued stock, and on the other hand, when they fail to discard an allegedly overvalued stock. Id., __ U.S. at __, 134 S. Ct. at 2470 (acknowledging an ESOP fiduciary's exposure to litigation "if he keeps investing and the stock

---

[4] It bears noting that the phrase "artificially inflated" or similar terminology does not appear anywhere in the Dudenhoeffer opinion. See generally __ U.S. at __, 134 S. Ct. at 2463–74. The only reference to an "inflated" stock price in the Dudenhoeffer opinion is the Supreme Court's recapitulation of the complaint's allegation that the defendants could have prevented losses to the fund by, inter alia, disclosing certain inside, i.e., nonpublic, information so that the plan "could continue to buy Fifth Third stock without paying an inflated price for it." Id., __ U.S. at __, 134 S. Ct. at 2472. The Supreme Court's discussion of the pleading standard applicable to claims based on nonpublic information is irrelevant to the claims made here.

7

goes down" and "if he stops investing and the stock goes up").[5]  The Court therefore finds nothing in Dudenhoeffer that supports the plaintiff's contention that the Supreme Court's reasoning is "only relevant in cases where the stock price is alleged to have been artificially inflated."  Opp'n at 10.

The plaintiff appears to seize on language in the opinion of the United States District Court for the Western District of New York in Gedek v. Perez, 66 F. Supp. 3d 368 (W.D.N.Y. 2014), to support her argument regarding the scope of Dudenhoeffer's application.  The Gedek court summarized the complaint in Dudenhoeffer as alleging "that the fiduciaries knew or should have known that the company's stock was overvalued."  Id. at 375 (emphasis added).  Distinguishing the factual allegations in Dudenhoeffer, the Gedek court stated that "[t]he question [before it was] not whether [the] defendants paid an artificially inflated price for Kodak stock, but whether they should have realized that Kodak stock represented such a poor long-term investment that they should have ceased to purchase, hold, or offer Kodak stock to plan participants."  Id. at 376 (emphasis added).  While the Court respects its sister court's reasoning, the Court is unpersuaded that the Gedek court's characterization of Dudenhoeffer supports the proposition that the Dudenhoeffer pleading standard is "only relevant in cases where the stock price is alleged to have been artificially inflated."  Opp'n at 10.

The Court concludes that the complaint falls entirely within the ambit of the general rule adopted by the Supreme Court in Dudenhoeffer.  At the outset of the complaint, the plaintiff limits her claims to the central allegation that the defendant "knew through public information that continued investment in [J.C. Penney] stock . . . was imprudent."  Compl. ¶ 2.  The

---

[5] Indeed, the Supreme Court's ultimate holding arose from its decision to "consider more fully one important mechanism for weeding out meritless claims, the motion to dismiss for failure to state a claim."  Id., __ U.S. at __, 134 S. Ct. at 2471.

complaint relies on J.C. Penney's falling stock price as demonstrating the imprudence of J.C. Penney stock as an investment. See id. ¶ 6 ("After the release of the Company's first quarter 2012 results . . . , the Company experienced its greatest single-day loss in 40 years when it plunged 19.7% dropping from $33.32 to $26.75 . . . ."); id. ¶ 39 (referencing the same stock price drop); id. ¶ 47 (chart showing decline of J.C. Penney's stock price from the beginning of 2012 to the end of 2013). The complaint also cites J.C. Penney's public regulatory filings detailing its falling revenues in the wake of the Company's transformation plan, id. ¶ 45 (chart showing declining revenues from the beginning of 2012 to the end of 2013), and financial analysts' negative assessments of J.C. Penney's performance, id. ¶ 48 ("Analysts were unanimous in their denunciation of the Company's performance throughout Johnson's tenure."); id. ¶ 49 (describing financial analysts' downgrades of J.C. Penney stock in early 2013). Given the complaint's exclusive reliance on public information as the basis for the plaintiff's allegation that the defendant should have known that continued investment in J.C. Penney stock was imprudent, the Court agrees with the defendant that this claim is indistinguishable from the types of allegations that the Dudenhoeffer Court held are implausible as a general rule.

### B. Special Circumstances and Gedek

The Dudenhoeffer Court did not identify what "special circumstances" a plaintiff could allege that would "render[] reliance on the market price imprudent," see __ U.S. at __, 134 S. Ct. at 2472, and this Circuit has not had an opportunity to address the question.[6] Here, the plaintiff

---

[6] The Court is aware of two post-Dudenhoeffer opinions that have squarely analyzed whether certain allegations in a complaint constitute "special circumstances" rendering a fiduciary's reliance on the stock's market price imprudent. In In re Lehman Bros. Sec. & ERISA Litig., 113 F. Supp. 3d 745 (S.D.N.Y. 2015), the court concluded that certain Securities and Exchange Commission orders, which were issued in July 2008 and warned that rumors regarding the financial health of Lehman Brothers may artificially depress the price of that company's stock, were insufficient to establish that "special circumstances" existed to alert the fiduciaries that Lehman Brothers stock was an imprudent investment. 113 F. Supp. 3d at 745–46. More recently, in In re 2014 Radioshack ERISA Litigation, the United States District Court for the Northern District of Texas concluded that the plaintiffs' contention that Radioshack's
(continued . . .)

expressly disclaims any need to plead special circumstances, as the court concluded in Gedek, because, as she asserts, her complaint does not rely on allegations that the price of J.C. Penney stock was inflated. Opp'n at 10–11; see generally Pl.'s Response to Def.'s First Notice at 2 ("[B]ecause plaintiff Coburn does not allege that the price of J.C. [Penney] stock was inflated at any time during the class period, . . . Dudenhoeffer's requirement that 'special circumstances' be [pleaded] to explain inefficiencies in the market is inapposite here.").

The plaintiff's decision not to plead special circumstances is fatal to her claim that the defendant should have known, solely from public information, that continued investment in J.C. Penney stock was imprudent. See Smith v. Delta Airlines, Inc., 619 F. App'x 874, 876 (11th Cir. 2015) (affirming dismissal of the complaint because the plaintiff failed to allege any special circumstances that made the fiduciary's reliance on the price of Delta Airlines stock imprudent, such as "fraud, improper accounting, illegal conduct[,] or other actions that would have caused Delta stock to trade at an artificially inflated price"); Mem. Op. & Order, In re 2014 Radioshack ERISA Litig., Def.'s Second Notice, Ex. A at 15–18 (rejecting Gedek's reasoning and holding that the plaintiffs in stock drop case alleging breach of the duty of prudence by ESOP fiduciary of a plan must allege special circumstances as required by Dudenhoeffer if claims are based on publicly available information); In re Citigroup ERISA Litig., 104 F. Supp. 3d 599, 616 (S.D.N.Y. 2015) ("Because the plaintiffs have not identified any special circumstances rendering reliance on the market price of the stock imprudent, Dudenhoeffer requires that their duty-of-prudence claim based on publicly available information be dismissed.").

---

( . . . continued)
slide into bankruptcy made continued investment in that stock excessively risky did not sufficiently allege "special circumstances" that rendered reliance on the market price of Radioshack stock unreliable as required by Dudenhoeffer. Mem. Op. & Order, In re 2014 Radioshack ERISA Litig., Master File No. 4:14-cv-959-O (N.D. Tex. Jan. 26, 2016), Def.'s Second Notice, Ex. A at 18.

Even assuming the validity of the Gedek court's application of Dudenhoeffer, the plaintiff's claim fails under that analysis. The Gedek plaintiffs held stock of the once-prominent Eastman Kodak Company ("Kodak") through, inter alia, an employee benefit plan not dissimilar to the J.C. Penney ESOP. See 66 F. Supp. 3d at 371. The Gedek court, summarizing the complaint, stated that Kodak stock was on a steady decline due to "fundamental problems with the company itself," and that Kodak's downward path was "so obvious and unstoppable that regardless of whether the market was 'correctly' valuing the stock, the fiduciaries should have halted or disallowed further investment in it." Id. at 375. Specifically, the Gedek plaintiffs alleged that the defendants should have known that Kodak stock was an imprudent investment because Kodak

> (a) depended on a dying technology and the sale of antiquated products no longer sought by the consumer; (b) was unable to bring new products to the market to counter the rapidly declining profits from the sales of its antiquated products; (c) was unable to generate sufficient cash-flow from its short term business strategy of initiating lawsuits, which would presumably garner settlements, to maintain [Kodak's] cash flow; (d) was suffering from a severe lack of liquidity; and (e) its stock price collapsed because of the above dire circumstances.

Id. (quoting the Amended Complaint ¶ 100).

The ominous circumstances surrounding Kodak in Gedek are distinguishable from the allegations made by the plaintiff about J.C. Penney here. The Gedek plaintiffs alleged that Kodak had come to rely on "a dying technology," "antiquated products," and short-term strategies, such as initiating lawsuits to enforce Kodak's patents in an effort to generate settlement payments from alleged infringers, to maintain a dwindling cash flow. See 66 F. Supp. 3d at 375, 377–78 (listing news reports and analysts predictions chronicling the failure of Kodak's core business and its imminent bankruptcy). In other words, in Gedek, the plaintiffs alleged sufficient facts to state a plausible claim that Kodak's publicly reported troubles

11

demonstrated that it no longer had a viable business model in an industry in which Kodak had failed to keep pace.

The plaintiff here does not make any allegation that, according to publicly available information, J.C. Penney's business as a retail department store was no longer viable in the industry. Instead, the complaint focuses on two business strategy changes announced by J.C. Penney in January 2012: J.C. Penney's decision to "abandon [its] prior practice of sales, coupons, and rebates" in favor of a different pricing strategy, and its decision to modify the appearance of J.C. Penney stores and its logos, and the brands available for purchase. Compl. ¶¶ 36, 37. At most, the plaintiff alleges that J.C. Penney's transformation plan was the "ill-conceived" idea of its chief executive, later ousted, who did not understand J.C. Penney's customer base. See id. ¶¶ 31, 40, 49–51. The Court is not convinced, nor has the plaintiff cited any authority supporting the proposition, that the mere failure of an allegedly "ill-conceived" business plan alone provides sufficient grounds to trigger an ESOP fiduciary's duty to remove company stock from an ESOP. Cf. Pfeil v. State Street Bank & Trust Co., 806 F.3d 377, 387 (6th Cir. 2015) (observing that "an ESOP's investment goals are to maintain, within reason, ownership of a particular employer's security" and that "[a] benefit of employees investing in their employer is that when the employer does well, the employees do well. A risk is that when the employer goes bankrupt, the employees do poorly."); DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 424 (4th Cir. 2007) (recognizing Congress's "strong policy and preference in favor of investment in employer stock" through employee stock ownership plans under the ERISA, and holding that the plaintiffs "cannot succeed in this lawsuit simply by demonstrating that U.S. Airways offered the Company Fund during a time of grave uncertainty for the company, no matter how significant the [plaintiffs'] ultimate financial losses") (quoting Fink v. Nat'l Sav. &

Trust, Co., 772 F.2d 951, 956 (D.C. Cir. 1985)). The plaintiff's reliance on Gedek is therefore misplaced and does not rescue the complaint from its failure to allege special circumstances as required by Dudenhoeffer.

### C. The Application of the "Continuing Duty" Principle Stated in Tibble

The plaintiff also argues that, Dudenhoeffer notwithstanding, the defendant violated its duty of prudence as recognized by the Supreme Court in Tibble v. Edison International, __ U.S. __, 135 S. Ct. 1823 (2015), which stated that "a [fiduciary] has a continuing duty to monitor . . . investments and remove imprudent ones," that "[t]his continuing duty exists separate and apart from the [fiduciary's] duty to exercise prudence in selecting investment at the outset," and therefore, a "plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." Id., __ U.S. at __, 135 S. Ct. at 1828–29; see Opp'n at 9. In support of this argument, the plaintiff asserts that the defendant "took no steps to protect Plan participants from the damage they suffered from the continuing and dramatic decrease in the value of Company stock . . . despite [the defendant's] awareness" of J.C. Penney's declining stock price and financial performance, and financial analysts' "unanimously negative" sentiment about the company. Opp'n at 9.

The Court has already concluded that, under the standard adopted in Dudenhoeffer, the complaint fails to state a claim for breach of the duty of prudence. The Supreme Court's decision in Tibble does nothing to alter that conclusion, because, as another district court recognized in a case involving a similar factual pattern, "Tibble did not involve claims based on a drop in an employer's stock price, and thus did not discuss [Dudenhoeffer's] holding."[7] In re

---

[7] Tibble involved claims brought by beneficiaries of a 401(k) savings plan alleging that the defendants breached their fiduciary duties by offering higher-priced, retail-class mutual funds bearing higher administrative costs, when lower-priced, institutional-class funds, with lower administrative costs, were available to the plan. __ U.S. at __, 135 S. Ct. at 1826.

Citigroup ERISA Litig., 112 F. Supp. 3d 156, 159 (S.D.N.Y. 2015).[8]  Even before Tibble, courts recognized that "a fiduciary has an ongoing duty to manage [an] investment with reasonable diligence because the 'fiduciary duty under [the] ERISA is continuous,'" Chao v. Trust Fund Advisors, Civ. A. 02-559 (GK), 2004 WL 444029, at *4 (D.D.C. Jan. 20, 2004) (quoting United States v. Mason Tenders Dist. Council of Greater N.Y., 909 F. Supp. 882, 888 (S.D.N.Y. 1995)); however, this principle provides no support for the plaintiff's claims as alleged because the entire complaint is based upon what the defendant allegedly should have done "in light of all relevant public information," including the company's declining stock price.  Compl. ¶ 54; see id. ¶ 47 (charts illustrating drop in J.C. Penney's stock price from the first quarter of 2012 to the last quarter of 2013); ¶ 51 ("Despite the . . . free fall in [J.C. Penney] stock . . . , [the defendant] did nothing to protect the assets of the Plan and the interests of its participants and beneficiaries . . . .").  Thus, the complaint fails to state a plausible claim for relief under Dudenhoeffer, and the Court must therefore grant the defendant's motion to dismiss.

## CONCLUSION

For the reasons set forth above, the Court grants the defendant's motion to dismiss, and the complaint shall be dismissed without prejudice.[9]

**SO ORDERED** this 17th day of February, 2016.

REGGIE B. WALTON
United States District Judge

---

[8] The plaintiffs in In re Citigroup, who were Citigroup employees who held Citigroup stock through an ESOP, alleged that the defendants "acted imprudently by continuing to allow the plaintiffs to invest in Citigroup common stock at a time when Citigroup stock was falling drastically."  112 F. Supp. 3d at 156.

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.